JARMSTRONG, Judge.
This is a personal injury case. On two separate occasions, the plaintiff was a passenger aboard city buses in New Orleans. The first accident involved a collision between the bus and a taxi. The plaintiff sued both the bus and the taxi companies for negligence. The second accident involved the bus and a private vehicle and, as to this second accident, the bus company admitted negligence. As to the first accident, after a bench trial, the trial court found both the bus driver and the taxi driver negligent, assessed 85% fault to the bus driver and 15% fault to the taxi driver, and awarded lump-sum damages (special and general) of $20,000. As to the second accident, the trial court awarded lump-sum damages (special and general) of $30,000. The bus company appeals and argues: (1) it was error to (a) find the bus driver negligent or, alternatively, (b) to assess such a large proportion, 85%, of the total fault to the bus driver; (2) it was error to award $20,000 damages for the first accident (the appellant seems to be arguing both that the first accident caused no injury or, if it did, then the $20,000 damages awarded included ^excessive general damages); and (3) the $30,000 damages award for the second accident included excessive general damages. Based upon a review of the record as a whole we cannot say that the trial court was clearly wrong-manifestly erroneous in its determination of fault as to the first accident and in its determination that the first accident caused injury to the plaintiff. Also, we cannot say that the trial court abused its discretion in setting the amount of general damages for either the first or the second accident. Therefore, we affirm the judgment of the trial court.
On November 14, 1994, plaintiff, Linda Lazard, was riding on the bus on Poydras Street in New Orleans. The bus was in the right lane and approaching the intersection of Baronne Street. The bus was driven by Mary Lawson and operated by Transit Management of Southeast Louisiana, Inc. (“TMSL”).
In the lane immediately to the left of the lane occupied by the bus was a taxi. The taxi was driven by James Brock and operated by Crescent Livery Association, Inc. (“Crescent”).
The taxi and the bus had a sideswipe-type collision. The exact manner of the collision was the subject of conflicting testimony at trial. The bus driver, Ms. Lawson, testified that the bus was moving at the time of the collision. The taxi driver, Mr. Brock, and Ms. Lazard testified that the bus was moving at the time of the collision. TMSL argues in its brief that the bus was fully in the right lane at the time of the collision. Mr. Brock testified that the bus came over toward his taxi and that, after the collision, both the taxi and the bus were on the white line that bdivided the lanes. Ms. Lazard testified that, while the bus was in motion at the time of the collision, the bus driver slammed on the brakes three times. She also testified that, the second time that the bus driver slammed on the brakes, she was thrown forward and her chest slammed into the railing of the seat in front of her.
In March, 1996, Ms. Lazard was again a passenger on an RTA bus that was involved in a collision. She testified that, during this second accident, she was thrown completely out of her seat and onto the floor of the bus, and that she landed on her shoulder.
Immediately after the first (November 14, 1994) accident, Ms. Lazard was seen by Dr. Joseph Guenther, (apparently a doctor of internal medicine) at the Gulf Coast Medical Center. Dr. Guenther did not testify but his record of that first visit reflects that Ms. Lazard suffered from pain in the neck, head and chest, that she gave a history of being in an RTA bus accident, and that his diagnostic impression was that Ms. Lazard had a cervical strain, contusion of the chest and post-traumatic cephalgia. X-rays were taken that same day and, as will be discussed more fully below, showed that Ms. Lazard had a condition of her back known as spondylolisthesis at the L5-S1 vertebrae. Dr. Guenther prescribed moist heat treatment and TNS electrical treatment.
Ms. Lazard went to Gulf Coast Medical Center for follow-up treatment and evaluation and was seen there by Dr. Jacqueline Lucas, a board-certified doctor of internal *1253 medicine on November 28, 1994, December 20, 1994, January 10,1995, January 31, 1995, February 23, 1995, March 13, 1995, April 25, 1995, June 16, lt1995, and July 13, 1995. Ms. Lazard also was seen by Dr. Daniel Seltzer, an orthopoedist, on December 14, 1994, and on a number of subsequent visits in 1995, 1996 and 1997. Ms. Lazard was still under Dr. Seltzer’s care as of the October 1998 date of trial.
In addition to the x-rays taken on the date of the accident, Ms. Lazard underwent a number of other diagnostic procedures. These were on MRI scan, a myelogram with CT scan, and an EMG nerve conduction study. One of these procedures, the myelo-gram with CT scan, involved an overnight hospital stay and unpleasant side effects. The EMG was also an invasive procedure. Ms. Lazard underwent an extensive course of physical therapy including ultrasound deep heat. She was prescribed and took both “mid-range” and “strong” pain medications and “strong” muscle relaxants.
Both Dr. Seltzer and Dr. Lucas testified at length about their examinations of Ms. La-zard, her symptoms and the extent of her injuries. We will summarize what seem to be the most pertinent of their findings. First, Ms. Lazard suffered from a congenital back condition, spondylolisthesis, which involves a missing piece of bone in her spine. This leads to the slipping of one bone over another. Ms. Lazard also had stenosis, which is a narrowing of the area through which nerve roots pass. These conditions made Ms. Lazard unusually susceptible to back injury. However, prior to the first accident at issue, Ms. Lazard had no symptoms or disability due to this congenital back condition. Second, more likely than not, the first (November 14, 1994) accident caused Ms. Lazard’s injury by aggravating her preexisting ^congenital back condition. Third, more likely than not, the second (March 15, 1996) accident injured Ms. Lazard further by aggravating the injury received in the first accident. Fourth, Ms. Lazard has two bulging discs in her back but it cannot be determined whether or not they were caused by trauma. Fifth, Ms. Lazard’s injuries are painful, require great restrictions on her .physical activity and cause her some modest amount of overall disability. Sixth, Ms. La-zard’s prognosis is for her pain and activity restrictions to continue indefinitely. It cannot be said whether she is more likely than not to require surgery in the future.
Ms. Lazard herself testified as to her pain, the extensive use of prescribed medications, physical therapy, restrictions on her activities, inability to carry on normal daily activities and great difficulty sleeping as a result of her injuries. This was corroborated in large part by the testimony of two friends who had known Ms. Lazard well for many years before her injury.
The trial court’s findings of fact may be disturbed on appeal only if they are clearly wrong-manifestly erroneous. E.g., Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). So long as the trial court’s findings of fact appear reasonable, based upon a review of the record as a whole, they must be upheld on appeal. Id.
We do not believe that the trial court’s finding of fact that the bus driver was at fault in the first accident, or the apportionment to the bus driver of 85% of the fault in that accident, is clearly wrong-manifestly erroneous. The bus company’s whole argument as to these issues is based upon the factual premise that the bus fcwas entirely within its own lane and that the collision occurred when the taxi, attempting to change lanes, entered the bus’ lane. However, the taxi driver testified that “the bus came upside” him and that, after the collision, both the bus and the taxi were on the white line that divides the lanes. The taxi driver’s testimony was more specific as to this issue than that of the bus driver so we certainly cannot find unreasonable the trial court’s evident conclusion that the taxi driver’s testimony was credible. Also, Ms. Lazard testified that the bus driver slammed on the brakes three times and that she was thrown forward and injured the second time the bus brakes were slammed. It also appears that the collision would not have occurred before the third time the brakes were slammed. The bus driver admitted that the RTA/TMSL manual says that bus drivers should avoid *1254 sudden stops that can injure passengers. Based upon this testimony, it was not unreasonable for the trial court to conclude that the driver’s fault was much more important than the taxi driver’s fault in causing Ms. Lazard’s injuries.
With respect to the $20,000 damages awarded for the first accident, it is well-settled that the tortfeasor “takes his victim as he finds him” and that the defendant can be liable for the aggravation of, and making symptomatic of, a pre-existing condition such as Ms. Lazard’s spondylolisthesis and steno-sis. E.g., Lasha v. Olin Corp., 625 So.2d 1002, 1005-06 (La.1993). Further, the medical testimony was positive and unrebutted that the first accident injured Ms. Lazard. Moreover, the amount of general damages is subject to the “vast discretion” of the trial court, e.g., Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), and, in light of the medical testimony and the testimony of Ms. Lazard, we cannot say that the trial court abused its discretion as to the amount of damages for the first accident.
As to the second accident, the bus company admits negligence but argues that the $30,000 damages is excessive. Again, this quantum is subject to appellate review only for abuse of discretion. Youn, supra. The medical testimony was positive and un-rebutted that the second accident aggravated the injury from the first. Also, although Dr. Seltzer was of the opinion that the first accident caused more of the injury than the second, the trial court could also consider Ms. Lazard’s testimony as to the effect of the two injuries upon her and her life. Also, the trial court may have been impressed by the fact that the second accident, in which Ms. Lazard was ejected completely from her seat, was the more violent experience in terms of Ms. Lazard’s physical pain and emotional shock at the times of the accidents themselves. Thus, we cannot say that the trial court abused its discretion in awarding somewhat greater damages for the second accident than the first.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.